The STATE of Ohio, Appellee,

v.

FINCH, Appellant.

[Cite as *State v. Finch* (1998), 131 Ohio App.3d 571.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–145.

Decided Dec. 3, 1998.

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender, for appellant.

MASON, Judge.

Defendant-appellant, Robert L. Finch, appeals from the judgment of the Franklin County Court of Common Pleas in which he was convicted of four counts of receiving stolen property. For the reasons that follow, we affirm the trial court's judgment.

At trial, David Russell testified that his 1990 Nissan pickup truck had been stolen, James Morgan testified that his 1991 Ford Explorer had been stolen, and Renee and Chi Lun Wang testified that their cargo trailer had been stolen. Based on information from a confidential informant, police officers executed a search warrant at the home of Lola Priddy at 726 Bellows Avenue. Priddy testified that appellant was her boyfriend and that she had noticed some vehicles in the back yard, but when she asked appellant about them, she was told that it was none of her business. Based on the search of the property, police recovered a Nissan pickup truck, a disassembled Ford Explorer, the license plates for the Ford Explorer, and the license plates for the cargo trailer. Appellant was found hiding behind a piece of plywood in the fenced-in backyard and was subsequently taken to the police station for questioning.

During an interview with police, appellant admitted that he lived at 726 Bellows Avenue and that he had put the Nissan pickup truck in the back yard to work on it for a friend. Appellant would not name the friend, but admitted that he thought the Nissan might be stolen. Appellant claimed ignorance as to how the Ford Explorer got into his backyard, saying that someone dropped it there. Nevertheless, appellant admitted that he had disassembled the Ford Explorer, including removing the seats and putting them in his own truck.

Appellant was indicted on four counts of receiving stolen property. Count one, involving the Nissan pickup, and count two, involving the Ford Explorer, were fourth degree felonies involving motor vehicles; count three, the license plate for the Ford Explorer, and count four, the license plate for the cargo trailer, were fifth degree felonies. A jury convicted appellant on all four counts. The court merged counts two and three for purposes of sentencing. The court then imposed a fifteen-month prison term on count one, a fifteen-month prison term for counts two and three as merged, and an eight-month prison term on count four, with all sentences to run consecutively, for a total of thirty-eight months.

On appeal, appellant sets forth two assignments of error, as follows:

"Assignment of Error Number One:

"The trial court imposed consecutive sentences in violation of the law.

"Assignment of Error Number Two:

"The trial court erred when it sentenced the defendant for possessing a stolen motor vehicle when the evidence did not establish that the property in question was a motor vehicle."

In his first assignment of error, appellant argues that the trial court erred in imposing consecutive sentences. R.C. 2929.41(A) provides that the trial court is to impose concurrent sentences unless it finds under R.C. 2929.14(E) that consecutive sentences are warranted. Because appellant was sentenced on January 15, 1998, former R.C. 2929.14(E)(3) supplies the necessary predicates for the imposition of consecutive sentences. Although appellant cites the current version of R.C. 2929.14(E)(4), we note that former R.C. 2929.14(E)(3) is the applicable statute and is substantially similar to the current version of R.C. 2929.14(E)(4). Former R.C. 2929.14(E) provided:

"(3) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

" * * *

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender."

Although, under prior law, trial courts were not required to explain their findings of fact or reasons for a particular sentence, the amendments promulgat-

ed by S.B. No. 2 require the trial court to make specified findings to better effectuate appellate review. *State v. Kase* (Sept. 25, 1998), Ashtabula App. No. 97–A–0083, unreported, 1998 WL 682392. Trial courts must make the finding on the record that they have considered the statutory criteria contained in R.C. 2929.14(E)(3) before imposing consecutive sentences. *Id.*

"A sentence which repeats the language of R.C. 2929.14(E)(3) without any indicia of a consideration of the factors set forth would be insufficient. For a meaningful review, the record must contain some indication, by use of specific operative facts, that the court considered the statutory factors in its determination." *Id.*

In the instant case, the sentencing entry is devoid of any findings in support of the order for consecutive sentences. The order states, "The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14." While this entry contains no indication of the court's reasoning for imposing consecutive sentences, the transcript of the hearing does contain the court's reasoning for imposing consecutive sentences. At the sentencing hearing, the trial court stated:

"I'm left with trying to decide what I'm supposed to do, not only in regard to what you did, but also there's some concern in sentencing as to protecting the public. You are what we call a repeat offender, having at least one, two, three, four prior numbers, four prior incarcerations."

Appellant argues that the trial court did not make any of the findings necessary as a prerequisite for the imposition of consecutive sentences and, therefore, the consecutive sentences were contrary to law. Specifically, appellant argues that the trial court did not "make specific findings that consecutive sentences were necessary to protect the public and were not disproportionate to the seriousness of the defendant's conduct and the danger the defendant posed to the public as required by law."

We agree with appellant that the trial court failed to specifically find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct[.]" R.C. 2929.14(E)(4). However, in *State v. Fincher* (Oct. 14, 1997), Franklin App. No. 97APA03–352, unreported, 1997 WL 638410, this court determined that the new sentencing laws do not "require talismanic words from the sentencing court" when a court imposes a maximum sentence. This court further stated:

"As an aid to appellate review, the better practice may be for the trial court to state in its entry its findings and the reasons for imposing the maximum sentence. However, in this case, the judgment entry stated that the court had weighed the R.C. 2929.14 factors, and a factual basis existed to support the imposition of the maximum sentence. * * * "

We find that a similar logic applies in the case at bar. The court's written judgment entry and the sentencing hearing demonstrate that the trial court considered the necessary criteria and made the necessary findings that a need existed to protect the public from appellant, a repeat offender with four prior incarcerations. Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the Ford Explorer recovered was not a motor vehicle as defined by R.C. 4501.01. Under R.C. 2913.51, the offense of receiving stolen property is punishable as a misdemeanor of the first degree unless the property is alleged and proven to be of a certain value or of a certain kind. R.C. 2913.51(B) provides that "[i]f the property involved is a motor vehicle, as defined in section 4501.01 of the Revised Code," the offense is a felony of the fourth degree. In count two of the indictment, appellant was charged with receiving a stolen motor vehicle, the Ford Explorer, and his conviction of the offense was treated as a fourth degree felony for sentencing purposes.

Appellant argues that the evidence adduced at trial never established that the Ford Explorer was a motor vehicle within the purview of R.C. 4501.01. R.C. 4501.01 provides:

"(B) 'Motor vehicle' means any vehicle, including mobile homes and recreational vehicles, that is propelled or drawn by power other than muscular power * * * "

At trial, evidence was introduced that showed that the Ford Explorer was in a serious state of disassembly. The tires, wheels, engine, doors, and seats were all removed, the top had been cut off and the Ford Explorer was, without doubt, merely a shell of its former self. Based on the fact that the Ford Explorer no longer had wheels or an engine, appellant argues that it was no longer a motor vehicle. We disagree.

If the only items missing from the Ford Explorer were the wheels and engine, then the Ford Explorer would be in a temporary state of disassembly and would undoubtedly still be a motor vehicle within the purview of R.C. 4501.01. *State v. Houston* (Dec. 24, 1987), Cuyahoga App. No. 53109, unreported, 1987 WL 30370. However, in the instant case, the question is whether, given the advanced state of disassembly in which the Ford Explorer was found, it is or is not still a motor vehicle.

In *Houston,* the Eighth District Court of Appeals addressed a similar situation wherein the vehicle's owner had taken a van to be serviced. The mechanic removed the engine, the hood and the grill to facilitate engine replacement. While waiting for parts, the van was vandalized and other persons removed the doors, windshield, battery, radiator, drive shaft, radio, and all four wheels and tires. At some later point, the body of the van was stolen and was found at a salvage yard. The owner of the salvage yard was convicted of receiving a stolen motor vehicle. The defendant successfully argued that the van in his possession no longer qualified as a motor vehicle under R.C. 4501.01. The court found:

"The stripped van which the defendant possessed when the police arrested him had no capacity to be propelled by its own power. A temporary mechanical defect which renders the vehicle inoperable does not cause it to lose its status as a motor vehicle for this purpose.  * * *

"Ordinarily, the decision whether a partially dismantled vehicle remains a motor vehicle for this purpose is a question of fact for the jury. However, this van was so substantially dismantled without any reasonable expectancy of its reassembly that, as a matter of law, it could not be considered a motor vehicle for this purpose."

The dissent in *Houston* argued that "[t]he majority's reliance on the state of the vehicle's repair and its operating condition fails to find support in R.C. 4501.01(B). The statute does not necessitate the vehicle to be in operating condition or good repair so as to constitute a 'motor vehicle.' R.C. 4501.01(B). Conversely, the statute emphasizes the design of the vehicle as the distinguishing feature in determining whether it constitutes a 'motor vehicle.' "

Furthermore, as recognized by the dissent in *Houston,* the "majority analysis invites circumvention of the enhancement statute, R.C. 2913.51(B), by focusing on the state of the vehicle's repair or operating condition—criteria not set forth in R.C. 4501.01(B)."

█ We decline to follow the reasoning of the majority of the court in *Houston* and agree with the reasoning set forth by the dissenting opinion. A motor vehicle does not cease to be a motor vehicle under the statute merely because it is temporarily incapable of self-propulsion. To hold otherwise would merely increase the incentives to chop shop or salvage operators who deal in stolen cars to immediately disassemble stolen vehicles upon receipt. If we followed the logic of *Houston,* these criminals could avoid the penalty enhancement provision of R.C. 2913.51(B).

█ Furthermore, the question of whether the Ford Explorer continued to be a motor vehicle was a factual issue to be decided by the trier of fact. The trier of

fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. *In re Good* (1997), 118 Ohio App.3d 371, 377, 692 N.E.2d 1072, 1076–1077. Accordingly, we will not usurp the power of the jury to make this factual determination as to whether the Ford Explorer is a motor vehicle for purposes of the enhancement provision of R.C. 2913.51(B). Appellant's second assignment of error is not well taken and is overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

LAZARUS, J., concurs.

DESHLER, P.J., concurs in part and dissents in part.

DESHLER, Presiding Judge, concurring in part and dissenting in part.

While I concur in the judgment rendered today regarding the second assignment of error, I respectfully dissent from the majority's disposition of the first assignment of error relating to sentencing.

We are again confronted by an allegation of error on the part of the trial court for failure to comply with R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), upon imposing consecutive sentences. More specifically, appellant claims that his sentence was contrary to law because of the trial court's failure to make necessary findings as a predicate to imposing consecutive sentences.

The mandates of the relevant statutes impose a burden on the trial court, where consecutive sentences are imposed, to enter findings that provide reasons for the sentences. R.C. 2929.19(B)(2)(c) states:

"(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:

" * * * *

"(c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."

The state argues that the trial court sufficiently complied with the applicable statute and relies on this court's previous decision in *State v. Fincher* (Oct. 14, 1997), Franklin App. No. 97APA03–352, unreported, 1997 WL 638410. The state

reveals the specious quality of its argument in the following language from its brief:

"In light of *Fincher*, the trial court sufficiently complied with the statutory scheme. Just as in *Fincher*, the trial court stated in its judgment entry that it had considered the applicable provisions of R.C. 2929.13 and 2929.14."

It should be obvious that, by merely stating in blanket fashion a general compliance with multifaceted statutes, no specific reason is provided. The state ignores the clear and specific command of the statute as the sentencing entry and, in the instant case, provides no reason as to the basis for consecutive sentences. Perhaps there was ample reason for imposing consecutive sentences in this case. However, the state's continued reliance on *Fincher*, which I view as wrongfully decided and not in accord with other courts of appeals on the subject, should not allow us to continue on a course of decisionmaking that fails to give full consideration to the literal wording of the statutes.

While I can sympathize with the trial court's burden of dealing regularly with a bewildering array of sentencing factors and mandates imposed by the legislature, the trial court must comply with the statutes. Moreover, assuming additional appeals of sentences under the fairly new scheme of sentencing imposed by the legislature, the sentencing entry should state reasons for the sentencing where consecutive or maximum sentences are involved. This procedure will provide some indication of the reasoning of the court in the event that the transcript or record of proceedings upon sentencing is either lost or destroyed.

Because of the majority's misplaced reliance upon *Fincher* and the reluctance to compel a liberal compliance with the relevant statutory mandates involved, I would sustain appellant's first assignment of error and remand the case for resentencing in accordance with R.C. 2929.14(E) and 2929.19(B).