OPINION
Defendant-Appellant, Guy Vince, appeals from a third degree misdemeanor conviction in the Dayton Municipal Court. On November 11, 1999, Vince was found guilty of violating Dayton R.C.G.O. 150.492, or failure to comply with a legal notice and requirement of the zoning administrator. The notice in question required Vince to clean up his property by removing various items like motor vehicle tires, scrap metal, and deteriorated wood fencing. After Vince submitted a clean-up plan, the trial court sentenced him to 30 days in the Dayton Human Rehabilitation Center, but suspended the sentence on condition that Vince remove: 1) all tires from the premises by May 16, 2000; 2) all automobiles not intact and operable by July 16, 2000; and 3) all non-conforming building materials by September 16, 2000.
Vince has timely appealed, and raises the following assignments of error:
 I. The trial court erred by adopting the City of Dayton's definition of "motor vehicles," and therefore committed error by ordering Appellant to remove all vehicles not "intact and operable."
 II. The trial court erred by requiring Appellant to remove all tires from the premises.
 I
According to the facts presented at the bench trial, Vince owns about five acres of land in the City of Dayton. On July 27, 1993, Vince obtained an occupancy permit which allowed him to operate a storage lot on the premises for storage of motor vehicles and construction materials. Vince testified, without contradiction, that he did not have an occupancy permit when he first occupied the property. All the motor vehicles (about 100) and property on the lot at the time of the court hearing were there when Vince obtained the occupancy permit. When Vince applied for the permit, he was told that the City would inspect the property. If the City was satisfied, a permit would be issued.
Almost six years elapsed from the time the occupancy permit was issued and the time when Carl Daugherty, a City of Dayton zoning specialist, visited the property. The evidence was undisputed that vandals had done considerable damage to many of the vehicles. When Daugherty visited, he saw storage of debris and what he would classify as junk material, i.e., disabled motor vehicles, motor vehicle parts and accessories, construction debris, fuel tanks, and automobile tires. Most of the autos had the windshields broken out, as well as one or more of the four main windows. Tires were deflated, and hoods were raised. Daugherty described the lot as "a junkyard."
Vince admitted that vandalism had taken place. He also admitted that the autos did not have batteries. Occasionally, Vince took a battery to the site and started the cars to make sure they ran. He did admit that some tires on the autos were not pumped up, and that extra wheels and tires were on the ground. However, he maintained that most tires were pumped up. Neither Daughtery nor Vince was able to say exactly how many autos were operable. Daugherty did not test the autos, and Vince said he would have to evaluate each one individually. Vince did indicate that some autos were possibly incapable of being made operable without expending more than the autos were worth.
Between January 6, 1999, and July 12, 1999, Daugherty and Vince discussed the clean-up of the lot. On April 1, 1999, Daughtery issued a legal notice of violation. Vince did not appeal that order, and no significant progress was made in cleaning up the lot. After further discussions were fruitless, the City then filed a complaint in Dayton Municipal Court against Vince on July 26, 1999.
In the first assignment of error, Vince contends that the trial court erred by adopting the City's definition of motor vehicles and by ordering Vince to remove all vehicles that were not intact and operable. According to Vince, the Dayton Revised Code of General Ordinances does not define "motor vehicle." As a result, Vince contends that any ambiguity in the term must be construed against the City.
The City makes several points in response. First, the City claims that Vince's failure to administratively appeal the legal order precludes him from raising any issues about the order in the present proceeding. Second, concerning the merits of the appeal itself, the City alleges that the prosecution presented sufficient evidence that the once operable items were no longer either intact or operable. Furthermore, the City contends that the autos in question did not qualify as "motor vehicles" under the Ohio Revised Code. Instead, many autos fit within the definition of "junk vehicle" found in the R.C.G.O. And finally, the City contends that even if one accepts the argument that the vehicles are still "motor vehicles," the autos were no longer either intact or operable.
As a preliminary point, we find that the City has waived any arguments about res judicata and failure to exhaust administrative remedies. Generally, these matters are affirmative defenses, which are waived if not presented to the trial court. See, e.g.,
 Ensley v. City of Dayton, Oh. (Aug. 16, 1995), Montgomery App. No. 14487, unreported, and Cooper v. Dayton (1997), 120 Ohio App.3d 34, 38-39. See also, State v. Washington (1998), 126 Ohio App.3d 264, 277
(noting that generally, appellate courts do not consider error which was not brought to the trial court's attention).
Strictly speaking, the matter is not "error," because the City seeks to uphold the trial court judgment. Moreover, since the City brought the complaint against Vince, res judicata would not be a defense, but might be used offensively, to preclude Vince from contesting certain facts. Nonetheless, the City did not ask the trial court to apply these doctrines, and we decline to consider them. The time to ask is not when the matter is on appeal.
Turning to the merits of the case, the notice given to Vince charges him with a violation of R.C.G.O. 150.436. This section of the zoning code provides that:
 [n]o building, structure, or addition thereto constructed, built, moved, remodeled, or reconstructed after February 7, 1968 shall be occupied or used for any purpose; and no land vacant on that date shall be used for any purpose; and no use of any land, building, or structure shall be changed to any other use unless an occupancy certificate shall first have been obtained from the Zoning Administrator certifying that the proposed use or occupancy complies with all the provisions of this chapter.
The specific violations alleged were:
 Use of property for storage of: Motor vehicle tires, wheels, metal bins, scrap metal, deteriorated wood fencing, scrap lumber, motor vehicle parts, metal and plastic drums, trailers, appliances, fans, and home furnishings/chairs and tables.
After finding Vince guilty, the trial court ordered Vince to remove all autos from the property that were not intact and operable. Although Vince does not appear to dispute that he was guilty of having some inappropriate materials on the property, he contends that the trial court erred in requiring the autos to be both "intact and operable."
As we said, the occupancy permit issued to Vince allowed the premises to be used as a "Storage lot for storage of motor vehicles Const. Material." Referring to the R.C.G.O., we note that it does not have a general definition section. Instead, terms are defined within various chapters of the Code, as pertinent to the subject matter of the particular chapter. The zoning code itself is located in Chapter XV of the R.C.G.O., in sections 150.01 through 150.999. However, while the zoning code contains many definitions applicable to zoning, definitions of "storage lot," "motor vehicle," and "construction material," are not included. Section 150.0354 does define "operable motor vehicle," as:
 [a] motor vehicle the engine of which can be started, and the vehicle can be driven under its own power at least 100 yards immediately upon request, or within 24 hours of the initial request, and which does not have disabling damage as defined by R.C.G.O. § 76.01(B)(2), as amended.
This definition is irrelevant, however, as it became part of the R.C.G.O. in 1995, i.e., it was not part of the Code at the time Vince's occupancy permit was issued. It is further irrelevant because the occupancy permit does not refer to "operable motor vehicles."
Notably, Vince's occupancy permit does not restrict storage only to vehicles which are intact and operable. Instead, the permit simply refers to "storage of motor vehicles." In this regard, the concept is well-established that:
 [z]oning ordinances are in derogation of the common law. They deprive a property owner of uses of his land to which he would otherwise be entitled. Therefore, where interpretation is necessary, such enactments are ordinarily construed in favor of the property owner.
University Circle, Inc. v. City of Cleveland (1978), 56 Ohio St.2d 180,184. Further,
 [i]n determining the permitted use of property under a zoning classification in which terms and language therein are not otherwise defined, the common and ordinary meaning of these terms and language must be considered, liberally construing the terms and language in favor of the permitted use so as not to extend the restrictions to any limitation of use not therein clearly prescribed.
Cicerella, Inc. v. Jerusalem Twp. Bd. of Zoning Appeals (1978),59 Ohio App.2d 31, 35.
Because the zoning code does not define "motor vehicle," both sides have relied on the definition of "motor vehicle" in R.C. 4501.01(B). Ironically, Vince reads the definition broadly, to include any auto, whether operable or not. By contrast, the City says a motor vehicle that is substantially damaged and is not operational does not meet the statutory definition.
According to the statutory definition, a motor vehicle "means any vehicle, including mobile homes and recreational vehicles, that is propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires." R.C. 4501.01(B). The plain terms of the statute do not require vehicles to be operational; instead, the statute merely distinguishes among types of vehicles, i.e., those propelled by power and those powered by muscle or by electric trolley wire.
To support its position, the City cites two Ohio cases which discuss whether a partially dismantled vehicle remains a "motor vehicle." Statev. Houston (Dec. 24, 1987), Cuyahoga App. No. 53109, unreported, andState v. Finch (1998), 131 Ohio App.3d 571.
In Houston, the engine, transmission, hood, grill, doors, windshield, battery, radiator, drive shaft, radio, and all four wheels and tires, had been removed from a van. Id. at p. 2. Relying on the definition of "motor vehicle" in R.C. 4501.01(B), the majority of the court recognized that a "temporary mechanical defect" rendering a vehicle inoperable does not make it lose its status as a motor vehicle. Id. However, the majority also felt that where a vehicle is "so substantially damaged without any reasonable expectation of its reassembly," it cannot be considered a motor vehicle. Id. The court's remarks were made in the context of deciding if the van was a "motor vehicle" for purposes of the penalty enhancing provisions in R.C. 2913.51(B). Specifically, if stolen property is a motor vehicle, R.C. 2913.51(B) increased the penalty for receiving stolen property from a misdemeanor of the first degree to a third degree felony.
Judge Krupansky, dissenting in part, pointed out that R.C. 4501.01(B) does not require a vehicle to be in operating condition or good repair. Instead, the judge noted that the statute focuses on the design of the vehicle as the distinguishing feature. Id. at 3. Furthermore, Judge Krupansky stressed that:
 "Motor vehicle" is a generic term. * * * It is a matter of common knowledge and every day observation that on the used car and outdoor show and display lots of the State, on adjoining garages, and in countless yards and various premises in this State, both rural and urban, stand unnumbered thousands of motor vehicles of every description, many in various conditions of disrepair. But few of them stand ready to operate or could otherwise qualify as "self-propelled," but they nonetheless are "motor vehicles."
Id. (citation omitted).
Subsequently, in Finch, the Tenth District Court of Appeals adopted Judge Krupansky's position. 131 Ohio App.3d at 576. Again, the vehicle in the case was in a serious state of disassembly, as the tires, wheels, engine, doors, and seats had been removed. Id. However, the court agreed with Judge Krupansky that R.C. 4501.01(B) does not require vehicles to be in operating condition or in good repair before they can be considered "motor vehicles." Id.
The City has cited these conflicting decisions to support its claim that Vince's vehicles were not "motor vehicles" for purposes of the occupancy permit. Although we think the approach of Judge Krupansky and the Tenth District is correct, we do not need to resolve the conflict. Specifically, most vehicles in the present case had temporary mechanical defects which rendered them inoperable. They were not substantially damaged, without reasonable expectation of reassembly. In this regard, we focus on the testimony of the City's zoning specialist, who indicated that the vehicles had damaged windshields and windows, and deflated tires. Photos taken of the scene show largely intact vehicles, with broken windows. Additionally, the zoning specialist said he had not tested the cars and did not know how many were operable. Even Vince's testimony that a few vehicles might cost more to repair than they were worth does not mean that the vehicles had anything other than temporary mechanical defects.
In view of these facts, we think the trial court's order was too broad. We also note that the alleged violations in Vince's notice do not mention motor vehicles. Instead, only "motor vehicle parts" were included. The City has argued that because the cars were in a state of disrepair, they should be considered "motor vehicle parts." Again, we disagree. We feel this is too broad an interpretation, both of the occupancy permit, and of the state of the vehicles.
Admittedly, the City has ordinances which prohibit storage of junked or abandoned vehicles, and which require owners to maintain their property. For example, Section 76.02 of the R.C.G.O. prohibits storage or parking of junked or abandoned vehicles on private property within the City and indicates that the presence of such vehicles is a public nuisance. However, this was not the basis of the charge against Vince. Instead, the criminal complaint alleged that Vince had violated R.C.G.O. 150.492(E) by failing to comply with the City's legal notice. The legal notice itself alleged only a violation of Vince's occupancy permit.
Likewise, R.C.G.O. 96.10 requires owners of premises to keep them clear of trash. Trash is defined as "litter and debris, including * * * parts of motor vehicles and machinery of whatever nature and design, wagons, furniture, glass, * * * or anything else of an unsightly or unsanitary nature." R.C.G.O. 96.01(B). Again, Vince was not cited for a violation of this section.
Similarly, R.C.G.O. 99.40 says that "[e]xcept as provided in the zoning code * * * no unregistered motor vehicle shall at any time be stored on the premises nor shall any motor vehicle be in a state of major disassembly or disrepair, nor shall it be in the process of being stripped or dismantled." Violation of this provision is a third degree misdemeanor. See R.C.G.O. 99.99. The City could, perhaps, have cited Vince for any of these violations, but it did not. To the contrary, the City chose to cite Vince only for violation of the occupancy permit.
In light of the preceding discussion, we think the trial court erred in requiring Vince to remove all vehicles that were not intact and operable. Accordingly, the first assignment of error is sustained.
 II
In the second assignment of error, Vince contends that the trial court erred in requiring him to remove all tires from the premises. Again, Vince claims the court's order is too broad, because it requires removal of all tires, whether attached to autos or not. The City responds that the trial court did not intend for Vince to remove tires from intact and operable vehicles, because that would make the vehicles inoperable. We agree with the City, subject to the comments we have made above about the requirement that vehicles be both operable and intact.
We think the trial court's order must be reasonably interpreted. The alleged violation was "use of the property for storage of: Motor vehicle tires." In proposing a clean-up plan, Vince offered to remove all loose tires from the premises and to take other actions by certain dates. The trial court's subsequent order adopted the proposed schedule, and stated that Vince was to remove "all tires from the premises by July 16, 2000." Although the order is not completely clear, we do not think the court meant for Vince to remove tires from the motor vehicles. As the City points out, that would make the autos incapable of being moved, even if they were operable. Accordingly, we interpret the trial court's order to mean that Vince was required to remove all tires which were not attached to motor vehicles.
Based on the preceding discussion, the second assignment of error is overruled. Having sustained the first assignment of error, and having overruled the second assignment of error, we reverse the part of the sentence which ordered Vince to remove all vehicles which were not intact and operable. In all other respects, the trial court's judgment is affirmed.
 _________________ BROGAN, J.,
YOUNG, J. and FAIN, J., concur.