OPINION
Defendant-appellant Ward L. Moore, Jr. appeals his convictions and sentences entered by the Stark County Court of Common Pleas on two counts of rape, in violation of R.C. 2907.02(A)(1)(b), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On April 10, 2001, the Stark County Grand Jury indicted appellant on four counts of rape, in violation of R.C. 2907.02(A)(1)(b), two of which included force specifications; and four counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). Appellant entered pleas of not guilty to all the charges in the indictment at his arraignment on May 4, 2001. Because the victims, Mark and Paul Bowen, were only five years old, the trial court conducted a hearing to determine whether the boys were competent to testify at trial. The trial court subsequently found both boys to be so. The matter proceeded to trial before a jury on July 11, 2001.
At trial, Rose Bowen, the mother of the victims, testified she had known appellant, who was a family friend, for three years. Bowen stated appellant stayed with the family for a few months after his father-in-law had kicked appellant out of his house. During December, 2000, appellant volunteered to babysit the twins to give Bowen and her husband an evening out. Appellant last babysat for the children on March 8, 2001. Appellant's wife, Melissa, could not watch the boys because she had an appointment with Stark Metro Housing. The following week, the boys disclosed to their mother appellant had molested them. After Bowen conferred with her husband, she brought the boys to the Canton Police Department and filed a report. The boys individually repeated their stories to a social worker from Child Protective Services. Thereafter, Bowen took the boys to Akron Children's Hospital for examination.
Kathy Laube, a social worker in the Care Center at Akron Children's Hospital, interviewed the boys to obtain a history in order to facilitate the subsequent medical examination. Laube testified she spoke with Paul and Mark, individually. Laube noted Paul was able to distinguish between the truth and a lie. During the interview, Paul told Laube appellant had touched and sucked his penis. Paul stated appellant threatened to beat him up if the boy told anyone about the incident. During Mark's interview, he informed Laube appellant had touched and sucked his penis. Mark told Laube appellant performed these acts multiple times. Mark further revealed appellant had touched his buttocks with a stick. Laube testified neither boy revealed any sexual abuse by anyone other than appellant.
Paul Bowen testified he knew appellant, but did not like him. During his testimony, Paul stated appellant had touched and sucked his penis. Paul noted this occurred when appellant was babysitting his brother, Mark, and him. Paul testified appellant performed fellatio on him, and made Paul do the same to him. Paul recalled appellant touched his penis lots of times, and performed fellatio on Paul approximately five times. Paul observed appellant touch and such Mark's penis. Paul further testified appellant warned him not to tell anyone or something bad would happen.
Mark Bowen also testified appellant touched and performed fellatio on him while appellant was babysitting his brother, Paul, and him. Mark stated he had touched appellant's penis, and appellant had placed his penis into Mark's mouth. Mark estimated the abuse occurred approximately six times. Mark testified appellant told the boy not to tell his parents.
Det. James Armstrong of the Canton Police Department testified he works in the juvenile division, handles all sexual abuse cases involving children, and investigated the allegations against appellant. Det. Armstrong arranged for appellant to come to the police station for an interview. Prior to the interview, appellant waived his constitutional rights. Appellant spoke with Det. Armstrong and Lyn Myers of Child Protective Services. Although appellant admitted he babysat the boys, he denied the allegations of sexual abuse. Appellant conceded he had problems with alcohol and anger management. At the end of the interview, appellant told Det. Armstrong and Myers he needed counseling. Armstrong spoke to appellant on the telephone later that day, and appellant advised the detective he needed to get an attorney and would not talk about the allegations any further.
After the State rested its case, appellant moved for acquittal pursuant to Crim.R. 29(A) as to the two force specifications. The trial court granted appellant's motion.
Appellant testified on his own behalf. He stated he alone had never cared for the Bowen twins alone, but only cared for them with his wife. Appellant recalled his wife cared for the boys on March 8, 2001. Appellant denied ever touching the boys' private parts or committing any sexual abuse upon them. Appellant did admit he had a problem with alcohol and anger management.
After hearing all the evidence and deliberations, the jury found appellant guilty of two counts of rape and two counts of gross sexual imposition, but was hung on the remaining two counts of rape and two counts of gross sexual imposition. The trial court sentenced appellant accordingly.
It is from these convictions and sentences appellant prosecutes this appeal, raising the following assignments of error:
 "I. THE TRIAL COURT ERRED IN FINDING THAT THE ALLEGED VICTIMS WERE COMPETENT TO TESTIFY.
 "II. THE TRIAL COURT ERRED IN PERMITTING THE SOCIAL WORKER TO TESTIFY AS TO THE STATEMENTS MADE BY THE ALLEGED VICTIMS.
 "III. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"IV. THE COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES."
 I
In his first assignment of error, appellant contends the trial court erred in finding the victims were competent to testify. We disagree.
The competency of a witness to testify at trial is governed by Evid.R. 601, which provides: "Every person is competent to be a witness except: (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
In State v. Frazier (1991), 61 Ohio St.3d 274, 574 N.E.2d 483, the Ohio Supreme Court set forth certain factors a trial court must consider when making a determination of whether a child under ten years of age is competent to testify. Specifically, the Frazier Court stated: "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child' s ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." Id. at syllabus.
We review a trial court's determination of a witness' competency under an abuse of discretion standard. In demonstrating an abuse of discretion, appellant must show more than error of law or judgment, he must show the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
In support of his argument, appellant emphasizes the inconsistencies and incorrect answers in the victims' testimony as well as the prosecutor's need to utilize leading questions and need to constantly ask the boys for their cooperation. We find appellant erroneously relies upon the victims' trial testimony to support his proposition the trial court abused its discretion in determining the twins were competent to testify. The trial court's determination of the boys' competency was based upon its voir dire of the boys. During the voir dire, the trial court asked both boys questions about the difference between the truth and a lie, the obligation to tell the truth as well as the adverse consequences for failing to tell the truth. The trial court also determined the boys were able to perceive just impressions. With respect to Mark, the trial court concluded the boy understood the nature of the proceedings and the difference between the truth and a lie as well as the fact a lie is not something you should do. Mark could distinguish facts and what would be the truth and a lie. With respect to Paul, the trial court noted the boy understood the difference between right and wrong, the nature of the proceedings, was able to express himself, and understood to tell a lie is not good and telling the truth is good. We find any confusion or inconsistency during the boys' trial testimony cannot be used to establish the trial court abused its discretion in finding them competent to testify based upon its voir dire of the boys. Any confusion, inconsistency, and/or inability to answer during trial would effect the weight and credibility to be given to the boys' testimony, not its admissibility.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in permitting Kathy Laube, the social worker in the Care Center at Akron Children's Hospital to testify regarding statements the boys made to her during their medical examination. Appellant asserts the only reason the children were taken to the hospital was to ensure the State had a means to present the boys' statements at trial should the trial court find them incompetent to testify.
"A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice." Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271,569 N.E.2d 1056. The words "abuse of discretion" mean that the trial court acted unreasonably, arbitrarily or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. An error in an evidentiary ruling does not warrant reversal of the trial court's judgment unless the trial court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103 and Civ.R. 61.
We agree Laube's testimony is hearsay pursuant to Evid.R. 801. As such, her testimony recounting the victims' statements is inadmissible except as provided by rule, statute or constitutional provision. Evid.R. 802. Evid.R. 803(4) provides an exception to the hearsay rule: "Statements for purposes of medical diagnosis or treatment and describing medical history or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
The trial court conducted a voir dire of Laube to determine whether her testimony qualified under Evid.R. 803(4). Laube testified she had interviewed approximately 200 children in situations in which there were allegations of either physical or sexual abuse. Laube explained the general purpose of the interview is to facilitate the subsequent medical examination. Laube shares the information she receives from the child with the nurse practitioner, who conducts the medical examination. Laube ultimately compiles a report which is sent to Children Services as well as the police department. Laube stated her role is medical, and not investigatory.
With regards to her interviews of Mark and Paul, Laube stated she had no knowledge of the family prior to their appointment at the Care Center. Mrs. Bowen provided Laube with a background of the boys' disclosures and informed Laube appellant, the alleged perpetrator, was incarcerated. When Laube first meets with a child, she tries to build a rapport. She asks the child basic questions such as his/her age, who the child lives with, colors, alphabet, and spacial concepts. Laube determines if the child can differentiate between the truth and a lie. Laube testified her interviews with Paul and Mark did not digress from this course. Upon the conclusion of Laube's voir dire testimony, the trial court overruled appellant's objection to her testifying at trial, finding the requirements of Evid.R. 803(4) had been met. The trial court found Laube's role was geared toward the assessment of both boys for purpose of the physical examination as well as psychological or physical needs, and determined her role was not investigative.
Upon review of the voir dire, we find the trial court did not abuse its discretion in admitting such evidence under Evid.R. 803(4).
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant challenges the manifest weight of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
Specifically, appellant maintains there was no credible evidence to establish he was alone with the boys at the time in question; therefore, he could not have abused the children.
Rose Bowen testified appellant babysat for the boys on March 8, 2001. Appellant submits Bowen's testimony was contradicted by the testimony of Vernita Prather, an employee of the Stark Metro Housing Authority, and appellant's wife, Melissa Moore. Prather testified she showed an apartment to Melissa Moore on March 8, 2001. According to Prather, Moore had three children with her at the time, one girl and two boys. Prather could not recall whether the boys looked alike or were twins. Melissa Moore testified she had the Bowen twins with her when she visited the Stark Metro Housing Authority. Moore conceded on cross-examination, the boys are striking as identical twins and could not be confused as being anything other than twins. Moore recalled appellant was at the Bowen house on the morning of March 8, 2001, but insisted another adult was at the residence with them.
The jury was free to accept or reject Mrs. Bowen's testimony in light of the contrary testimony of Prather and Moore. There exists sufficient, competent and credible evidence to support the jury's determination appellant was with the boys on the day in question. Accordingly, we find appellant's convictions were not against the manifest weight of the evidence.
Appellant's third assignment of error is overruled.
 IV
In his final assignment of error, appellant submits the trial court erred in imposing consecutive sentences. Specifically, appellant asserts the trial court did not articulate sufficient reasons to find a single prison term would not adequately punish appellant and protect the public.
Pursuant to R.C. 2929.14(E)(4), a trial court may impose consecutive terms of imprisonment if it makes three findings. First, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(E)(4). Second, the consecutive terms must not be disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the trial court must also find that one of the additional factors listed in R.C. 2929.14(E)(4)(a) through (c) applies: "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense; (b) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct; (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
R.C. 2929.14(E)(4) does not require the trial court to use the exact words of the statute when imposing consecutive sentences upon an offender. State v. Finch (1998), 131 Ohio App.3d 571, 575. However, the trial court is required to state sufficient supporting reasons for imposition of such sentences. R.C. 2929.19(B)(2)(c); See State v.Edmonson (1999), 86 Ohio St.3d 324, 326.
In its July 27, 2001 Found Guilty by Jury and Sentence Imposed, the trial court stated: "Pursuant to Revised Code Section 2929.14(E) the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the defendant and not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public.
"The harm caused by the defendant was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct."
On the record, the trial court specifically noted: "You were also in a position of trust. You were given the charge of these children. You took advantage of that opportunity to defile these young children so when I measure the seriousness of the conduct, the seriousness of the offense, the probability that you would reoffend, the public would not adequately be protected, to give you the minimum would certainly demean the seriousness of the offense and not adequately protect the public.
The trial court continued: "And because of the factors that this was such an outrageous offense against two separate individuals of five years of age, consecutive sentences would not be disproportionate to the seriousness of the conduct and your danger to the public as a result of this conduct far outweighs giving you a singular sentence of this conduct.
"And the harm caused to these youth because of the separate offenses involving separate victims was so great that no single prison term would adequately reflect the seriousness of that conduct.
"As a result of which the Court is going to impose consecutive sentences. Those sentence[s] are going to be nine years with regard to each of the two counts of rape to be served consecutively." T. III 486-487.
We find the trial court satisfied the mandates of R.C. 2929.14(E)(4).
Appellant's fourth assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
By: HOFFMAN, P.J. GWIN, J. and WISE, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.