OPINION
{¶ 1} Defendant-appellant, Alfred Cockrell, appeals from the April 19, 2004 judgment of the Franklin County Court of Common Pleas finding him guilty of felonious assault and sentencing him to eight years incarceration. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On September 26, 2003, appellant was indicted on one count of aggravated burglary, a felony of the first degree, one count of felonious assault, a felony of the second degree, and one count of domestic violence, a misdemeanor of the first degree. At the request of plaintiff-appellee, State of Ohio, the domestic violence count of the indictment was dismissed. On February 24, 2004, appellant's case proceeded to trial. The following testimony was elicited from Mary Freeman (the victim), a Columbus police officer and burglary detective, an emergency room registered nurse for Grant Hospital, and an on-call ophthalmologist for Grant Hospital. Appellant did not testify.
 {¶ 3} Prior to September 17, 2003, appellant and Freeman were in a romantic relationship for nine months. (February 23, 2004, Tr. 35-36.) On September 17, appellant came to Freeman's apartment in order to retrieve his personal belongings. While in Freeman's apartment, a scuffle ensued between the two. Appellant started hitting Freeman on her head with his fists. Appellant used a kitchen knife to cut up a couch that he had previously given to Freeman. He also broke her glass table. Freeman testified that appellant threatened to kill her. (Tr. 75.) Freeman testified that she received a few scratches on her neck from the knife that appellant was brandishing. Id. According to Freeman, a neighbor called the police. Id. When the officers arrived, they handcuffed appellant and removed him from the apartment. Freeman testified that the officers later released appellant a couple of blocks away from her apartment. (Tr. 78.)
 {¶ 4} On the evening of September 18, 2003, Freeman testified that appellant came to her apartment and started knocking on the door and shouting. (Tr. 88.) Freeman called 9-1-1. Appellant kicked the front door a couple of times. Unsuccessful in gaining entry, appellant threw a brick through the Plexiglas window of Freeman's screen door, reached inside her apartment, opened the door and entered her apartment. Freeman testified that when appellant entered her apartment, he started beating her on the head and on the face. (Tr. 36.) Freeman testified that the beating was severe and that she was experiencing a lot of pain. (Tr. 81.) Freeman stated that appellant told her, "You made me do it." (Tr. 106.)
 {¶ 5} The police officers arrived and handcuffed appellant. Paramedics treated Freeman at the scene and later transported her to Grant Hospital's emergency room ("ER"). Freeman testified that while in the ER she was experiencing severe pain, dizziness and could see a red ball through her left eye. (Tr. 46.) Freeman has had one surgery on her left eye and is expected to undergo another procedure. (Tr. 47.)
 {¶ 6} Officer Bronson Constable testified that, upon arriving at Freeman's apartment, he noticed that the Plexiglas window to the front door of the residence had been broken out. Officer Constable entered the apartment and observed a broken coffee table in the middle of the room. Officer Constable, working under the assumption that a burglary was in progress, handcuffed appellant and then proceeded to fully investigate the incident. Officer Constable testified that Freeman had swelling over her left eye with bruising and she appeared to be in distress. (Tr. 121-122.) Officer Constable testified that he was concerned that Freeman had injury to her head so he called for a paramedic to come and evaluate Freeman. Officer Constable observed that appellant was agitated. Officer Constable testified that he did not recall seeing a brick. (Tr. 132.)
 {¶ 7} Burglary Detective Brian Keefe was called to Freeman's residence to investigate the scene. Detective Keefe briefly observed the exterior of the apartment, but immediately went to the hospital to speak to Freeman. On cross-examination, Detective Keefe testified that, when he arrived at the hospital, he was able to interview Freeman. Freeman did not appear to be heavily sedated and her speech was clear and not sluggish or slurred. She answered all of his questions and told him what happened on September 17, as well as on September 18.
 {¶ 8} Michelle Mason, ER Registered Nurse, testified that Freeman told her that, on the preceding night, appellant attempted to stab Freeman and that on the following evening, appellant punched Freeman in the face repeatedly. (Tr. 213.) Nurse Mason testified that Freeman had a one-centimeter abrasion on her left cheek, a six-centimeter laceration to the left side of her neck behind her ear, severe swelling with red and purple bruising to her left eye, and a large knot above her right eye. (Tr. 214.) Freeman complained of severe pain in her left eye. Her left eye was swollen shut. Freeman was able to see some light, but mainly saw shadows with some pink color and a big black dot. (Tr. 215.) Nurse Mason testified that Freeman's condition was "pretty severe." Id.
 {¶ 9} Dr. Alan Rehmar, an on-call ophthalmologist for Grant Hospital, testified that, in examining Freeman's left eye, he observed a moderate amount of cataract, evidence of significant blunt trauma, considerable swelling and bruising, and that her eye was swollen shut and had hemorrhaged on the surface. (Tr. 239.) A large part of the back of Freeman's eye was full of blood. (Tr. 243.) Dr. Rehmar testified that there was inflammation in the anterior chamber, and that Freeman's pupil was irregular and had small microscopic tears. (Tr. 240.) The lens of Freeman's left eye was partially dislocated. In examining Freeman's retina, Dr. Rehmar observed swelling and hemorrhaging along with the pressure in the eye being elevated above the normal range.
 {¶ 10} Dr. Rehmar testified that "it takes pretty good force to rupture the little fibers that hold the lens in place." (Tr. 240.) Dr. Rehmar testified that Freeman's injuries were pretty severe and that her vision in that eye was threatened. (Tr. 240-241.) Dr. Rehmar testified that Freeman's "vision was very poor, below the level of legal blindness." (Tr. 243.) In his professional opinion, Dr. Rehmar determined that Freeman had to undergo surgery to remove the dislocated and cataractous lens. Id.
 {¶ 11} On November 21, 2003, Dr. Rehmar performed a vitrectomy and lentectomy to remove the blood that was filling the back part of Freeman's left eye. Dr. Rehmar testified that he performed the surgery to try to regain vision in Freeman's eye. (Tr. 247.) Dr. Rehmar testified that, since the surgery, Freeman can see pretty well, but, in order for Freeman to see anything with detail, she would have to wear a contact lens or undergo a second surgery to implant an artificial lens in her left eye. Id.
 {¶ 12} The jury found appellant guilty of felonious assault and not guilty of aggravated burglary. The trial court sentenced appellant to eight years incarceration. It is from this sentencing entry that appellant appeals, assigning the following as error:
Assignment of Error No. 1
The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction.
Assignment of Error No. 2
The trial court abused its discretion by imposing the maximum sentence for felonious assault without making the necessary finding that appellant committed the worst form of the offense, or that appellant posed the greatest likelihood of committing future crimes and appellant's sentence was not supported by the record.
Assignment of Error No. 3
The trial court abused its discretion by allowing prejudicial testimony from a nurse under evidence rule 803.4.
 {¶ 13} In his first assignment of error, appellant argues that the inconsistencies in the evidence are insufficient to support a conviction for felonious assault. Specifically, appellant wants this court to take note that the officers did not see appellant and Freeman fighting, that the brick appellant allegedly used to break the glass to Freeman's screen door to gain entrance was in "plain view" but never recovered from the scene, and the alleged inconsistencies in Freeman's testimony.
 {¶ 14} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 15} In this case, appellant was found guilty of felonious assault, a felony of the second degree in violation of R.C. 2903.11, which provides in part, "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another." While viewing evidence in a light most favorable to the prosecution, there was sufficient evidence for any rational trier of fact to have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 16} Freeman testified that appellant entered her apartment on September 18, 2003, and started beating her while she was on the telephone calling 9-1-1. Freeman testified that appellant was hitting her like he was hitting a punching bag and that she was in severe pain.
 {¶ 17} Photographs showed damage to the exterior of Freeman's apartment. Officer Constable testified that Freeman had swelling over her left eye with bruising and she appeared to be in distress.
 {¶ 18} Medical records and photographs showed Freeman's injuries. Appellant argues that Freeman's nails were not evaluated for skin samples to prove that Freeman was fighting appellant off. However, appellant fails to demonstrate how the failure of the detectives to scrape under Freeman's nails amounts to insufficient evidence warranting an acquittal. In addition, Nurse Mason and Dr. Rehmar also testified to the serious physical harm appellant inflicted on Freeman. Nurse Mason testified that she observed severe swelling with red and purple bruising to Freeman's left eye, along with a large knot above her right eye. While in the ER, Freeman complained of severe pain in her left eye. Her left eye was swollen shut. Nurse Mason testified that Freeman's condition was "pretty severe."
 {¶ 19} Dr. Rehmar testified that, in examining Freeman's left eye, he observed there was evidence of significant blunt trauma, considerable swelling and bruising, her left eye was swollen shut and had hemorrhaged on the surface, and that a large part of the back of Freeman's eye was full of blood. (Tr. 243.) Dr. Rehmar testified that "it takes pretty good force to rupture the little fibers that hold the lens in place." (Tr. 240.) In his medical opinion, Dr. Rehmar concluded that Freeman's injuries were pretty severe and her vision was below the level of legal blindness. Surgery was necessary to remove the blood that was filling the back part of Freeman's left eye.
 {¶ 20} Based on the foregoing, we find that the evidence was sufficient to prove the essential elements of the crime of felonious assault beyond a reasonable doubt. Freeman's testimony identified appellant as the person who attacked her and numerous witnesses testified as to the severity of the beating. As such, appellant's first assignment of error lacks merit and is not well-taken.
 {¶ 21} In his second assignment of error, appellant argues that the maximum sentence imposed by the trial court was impermissible under R.C.2929.14(C). Specifically, appellant argues that, while he exercised poor judgment, "his actions did not reflect an utter lack of concern for [Freeman] or demonstrate a perversity of character that would justify the imposition of the maximum sentence." (Appellant's brief, at 8.)
 {¶ 22} R.C. 2929.14(C) provides:
Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
 {¶ 23} Ohio's statutory scheme disfavors maximum sentences. State v.Edmonson (1999), 86 Ohio St.3d 324, 325. R.C. 2929.14(C) allows the trial court to impose the maximum prison term for an offense upon offenders who: (a) committed the worst forms of the offense; (b) offenders who pose the greatest likelihood of committing future crimes; (c) major drug offenders; and (d) repeat violent offenders. The trial court need only find that appellant falls into one of the above four categories. Statev. Clark, Franklin App. No. 02AP-1312, 2003-Ohio-4136; State v. South,
Portage App. No. 2002-P-0137, 2004-Ohio-3336; State v. Brewer, Clark App. No. 02CA0057, 2004-Ohio-3397; State v. Fair, Cuyahoga App. No. 82278, 2004-Ohio-2971.
 {¶ 24} Pursuant to the sentencing statutes, if the trial court imposes the maximum prison term, the court must make a finding stating its reasons for selecting the sentence imposed and its reasons for imposing the maximum term. R.C. 2929.19(B)(2)(d); State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph two of the syllabus; Edmonson, supra, at 328. "While the trial court is not required `to utter any magic or talismanic words, * * * it must be clear from the record that the court made the required findings.'" Clark, supra, at ¶ 15, quoting State v. White
(1999), 135 Ohio App.3d 481, 486; State v. Quinn (1999),134 Ohio App.3d 459; State v. Finch (1998), 131 Ohio App.3d 571.
 {¶ 25} A close reading of the sentencing transcript reveals that the trial court complied with R.C. 2929.14(C):
[THE COURT:] So the Court concludes under 2929.14(C) that this was the worst form of this offense. It is not simply a one punch break of the jaw which qualifies for felonious assault even though it is a single act. This was a breaking into the woman's home, under my judgment, whatever the jury's belief or confusion, there was a clear intent to do harm to this woman. Not only that, there was a very serious harm done.
* * * We have our eyes and when they are damaged we are blind. And Ms. Freeman has now a significant injury as a result of Mr. Cockrell not just giving one punch, but pounding her about the head with his fist. And Mr. Cockrell's been in prison for doing a similar or same type of crime on earlier occasions. So I conclude that this is the worst form of the offense.
Unfortunately, Mr. Cockrell seems to pose the greatest likelihood of committing future crimes. So the Court does impose an eight year maximum. * * *
(April 16, 2004 Tr. 7-8.)
 {¶ 26} In addition to noting appellant's extensive criminal background, which included a robbery and kidnapping in 1975 where appellant was sentenced to two to 15 years incarceration, and a felonious assault conviction in 1996 that resulted in a three to 15 year prison term, the trial court also noted that appellant was not remorseful. These facts support the trial court's findings that appellant posed the greatest likelihood of committing future crimes. Additionally, the trial court noted that, after viewing the pictures of Freeman's injuries and listening to Freeman's testimony of appellant beating her on her head and on her face and Freeman's description of being in excruciating pain, appellant did commit the worst form of the offense. The trial court adequately stated its reasons for imposing a maximum sentence.
 {¶ 27} The trial court, pursuant to R.C. 2929.19(B)(2)(d), stated its reasons on the record for sentencing appellant to the maximum sentence and also mentioned R.C. 2929.14(C) and made the determination that two of the four categories of R.C. 2929.14(C) applied to appellant. Because the trial court complied with the appropriate sentencing statutes, we cannot clearly and convincingly find that appellant's maximum sentence was contrary to law or unsupported by the record. State v. Unrue, Summit App. No. 21105, 2002-Ohio-7002, at ¶ 46. Accordingly, this court will not disturb appellant's sentence. R.C. 2953.08(G). As such, appellant's second assignment of error lacks merit and is not well-taken.
 {¶ 28} In appellant's third and final assignment of error, he argues that the trial court abused its discretion in allowing prejudicial testimony from Nurse Mason to be admitted as a hearsay exception. Specifically, appellant maintains that Nurse Mason's testimony that Freeman told Nurse Mason "the night before, [Freeman's] ex-boyfriend had attempted stabbings, several stabbings" was prejudicial, as the testimony had nothing to do with Freeman's treatment or diagnosis and improperly bolstered the credibility of Freeman. (Appellant's brief, at 10.)
 {¶ 29} A trial court's decision on the admissibility of evidence is reviewed under an abuse of discretion standard. See State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} Under Evid.R. 802, hearsay is not admissible unless the statement comes under some exception to the hearsay rule. Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of statements made in order to further medical treatment or diagnosis. Evid.R. 803(4), provides:
Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
 {¶ 31} Statements, which are admissible under Evid.R. 803(4), are understood to be reliable because: (1) the effectiveness of treatment frequently depends upon the accuracy of the information related to the physician, see State v. Boston (1989), 46 Ohio St.3d 108, 121; and (2) such statements are "reasonably relied on by a physician in treatment or diagnosis." State v. Dever (1992), 64 Ohio St.3d 401, 411.
 {¶ 32} Given these dual rationales for the hearsay exception, a two-part test has been adopted to determine admissibility of hearsay statements under Evid.R. 803(4): "First, the question is whether the declarant's motive is consistent with that of a patient seeking treatment. Second, the question is whether it is reasonable for the physician to rely on the information in diagnosis or treatment." State v.Clary (1991), 73 Ohio App.3d 42, 52.
 {¶ 33} Nurse Mason's testimony related to information Freeman communicated to her during Nurse Mason's compilation of Freeman's medical history during the emergency room intake procedure. Nurse Mason testified that she interviewed Freeman in order to obtain a history related to Freeman's injury in order to assist the doctor in his medical diagnosis and treatment. There is no evidence in the record that Nurse Mason asked Freeman any questions beyond what was necessary in order for Freeman to be properly diagnosed and treated for her injuries. Freeman's remarks to Nurse Mason that appellant attempted to stab her described the "cause or external source" of the pain that Freeman had experienced since the incident. This was evidenced by the lacerations on Freeman's face. Therefore, the trial court did not abuse its discretion in finding the testimony of Nurse Mason admissible under Evid.R. 803(4). Furthermore, appellant was not prejudiced, as appellant was the one who opened the door regarding the knife injuries during Freeman's cross-examination testimony. (Tr. 68-79.) Appellant's third assignment of error lacks merit and is not well-taken.
 {¶ 34} For the foregoing reasons, appellant's first, second, and third assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and French, J., concur.